United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ABDULHALIM SAYYID HANIF EL,

    Plaintiff,

        v.

CAROLYN W. COLVIN,

        Defendant.

Case No.  15-cv-01481-HSG

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 17

        Plaintiff Abdulhalim Sayyid Hanif El seeks judicial review of Defendant Commissioner of Social Security's decision denying his application for disability insurance benefits and supplemental security income.  Pending before the Court is Plaintiff's motion for summary judgment.  For the reasons articulated below, the Court DENIES Plaintiff's motion.

## I.      BACKGROUND

        Plaintiff is a 44-year-old man.  Administrative Record ("AR") at 20.  On December 30, 2011 and January 12, 2012, Plaintiff filed applications for disability insurance benefits and supplemental security income under the Social Security Act, alleging a disability onset date of March 15, 2011.  *Id.* at 12.  The Social Security Administration ("SSA") initially denied Plaintiff's applications.  *Id.*  Plaintiff requested a hearing before an administrative law judge ("ALJ"), and his case was heard by ALJ John Heyer on September 26, 2013.  *Id.*

        ALJ Heyer issued a decision finding that Plaintiff was not disabled on October 25, 2013.  *Id.* at 22.  The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for further review on February 9, 2015.  *Id.* at 1.  Plaintiff filed this action on March 31, 2015, Dkt. No. 1, and moved for summary judgment on August 21, 2015, Dkt. No. 17 ("Mot.").  On September 19, 2015, the Commissioner filed an opposition to Plaintiff's

motion for summary judgment, Dkt. No. 18 ("Opp."), and Plaintiff filed a reply brief on

September 28, 2015, Dkt. No. 19 ("Reply").

## II.    LEGAL STANDARD

### A.    Standard Of Review

The ALJ's denial of benefits may be disturbed only if it is not supported by substantial

evidence or if it is based on the application of improper legal standards.  *Vertigan v. Halter*, 260

F.3d 1044, 1049 (9th Cir. 2001).  Evidence is substantial if it is "more than a mere scintilla but

less than a preponderance; it is such relevant evidence that a reasonable mind might accept as

adequate to support a conclusion."  *Sandgathe v. Charter*, 108 F.3d 978, 980 (9th Cir. 1997).  To

determine whether substantial evidence exists to support the ALJ's decision, the court examines

the administrative record as a whole and considers evidence both supporting and detracting from

the decision.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  "Where evidence is

susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be

upheld."  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  A court may not reverse the

ALJ's decision on the basis of an error that is harmless.  *Molina v. Astrue*, 674 F.3d 1104, 1111

(9th Cir. 2012).

### B.    Standard For Determining Disability Benefits

To qualify for disability benefits under the Social Security Act, a claimant must be

"disabled." 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1).  The Act defines "disability" as the "inability

to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months."  *Id.* § 423(d)(1)(A).  The claimant

bears the burden of making out a prima facie case of disability.  *Thomas v. Barnhart*, 278 F.3d

947, 955 (9th Cir. 2002).  However, SSA "has a special duty to fully and fairly develop the record

and to assure that the claimant's interests are considered."  *Brown v. Heckler*, 713 F.2d 441, 443

(9th Cir. 1983).

Social Security disability cases are evaluated using a five-step, sequential evaluation

process.  20 C.F.R. § 416.920.  First, the ALJ must determine whether the claimant is engaged in

United States District Court
Northern District of California

2

"substantial gainful activity." *Id.* § 416.920(a)(4)(i).  A person is involved in "substantial work activity" if she engages in work that involves significant physical or mental activities.  *Id.* § 416.972(a).  "Gainful work activity" is defined as "work usually done for pay or profit," regardless of whether the claimant actually receives a profit.  *Id.* § 416.972(b).  If the claimant is engaged in substantial and gainful activity, she is not disabled; otherwise, the evaluation proceeds to step two.

At step two, the ALJ must determine whether the claimant has an impairment or combination of impairments that is severe.  *Id.* § 416.920(a)(4)(ii).  A "severe" impairment is defined as one that significantly limits an individual's ability to perform basic work activities.  *Id.* § 416.920(c).  If a claimant does not have a severe impairment, the claimant is not disabled and is not entitled to disability benefits, but if the impairment or combination of impairments is severe, the evaluation proceeds to step three.

At step three, the ALJ must determine whether the claimant's impairment or combination of impairments meets or medically equals the requirements listed in 20 C.F.R. Part 404, Subpart P, App. 1.  *Id.* § 416.920(a)(4)(iii).  If the claimant's condition meets or exceeds the requirements of a listed impairment, the claimant is disabled; if not, the analysis proceeds to step four.

At step four, the ALJ must first determine the claimant's residual functional capacity ("RFC") in view of the claimant's impairments and the relevant medical and other evidence in the record.  *Id.* § 416.920(e).  Based on the RFC, the ALJ then determines whether the claimant is able to perform the requirements of her "past relevant work."[1]  *See id.* § 416.920(a)(4)(iv), (f).  If the claimant can still perform work that the individual has done in the past, the claimant is not disabled; otherwise, the evaluation proceeds to step five.  *Id.* § 416.920(a)(4)(iv).

At step five, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled.  *Thomas*, 278 F.3d at 955.  Taking into account a claimant's age, education, vocational background, and RFC, the Commissioner must show that the claimant can perform some work

---

[1] "Past relevant work" means substantial gainful activity performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last fifteen years or fifteen years prior to the alleged disability onset date.  20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    that exists in significant numbers in the national economy.  20 C.F.R. §§ 416.920(a)(4)(v),

2    416.960(c).

3    **III.    DISCUSSION**

4        **A.  The ALJ's Decision**

5        In his October 25, 2013 decision, the ALJ applied the five-step sequential analysis

6    articulated above.  The ALJ determined at step one that Plaintiff did not engage in substantial

7    gainful activity since his alleged disability onset date.  AR at 14.  At step two, the ALJ found that

8    Plaintiff had the "severe impairments" of scoliosis, post-traumatic stress disorder ("PTSD"), and

9    depression.  *Id.*

10       At step three, the ALJ concluded that Plaintiff's severe impairments did not meet the

11   severity of one of the listed impairments.  *Id.* at 15.  As to Plaintiff's severe physical impairment,

12   scoliosis, the ALJ found that "[t]he medical evidence does not establish the requisite evidence of

13   nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis as required under listing

14   1.04," and no evidence demonstrated that Plaintiff's "back disorder has resulted in an inability to

15   ambulate effectively."  *Id.*

16       As to Plaintiff's severe mental impairments, the ALJ considered both the "paragraph B"

17   and the "paragraph C" criteria in making his finding that the severity of Plaintiff's PTSD and

18   depression "does not meet or medically equal the criteria of listing 12.04 and 12.06."  *Id.*  For the

19   paragraph B criteria, the ALJ found that Plaintiff has "a mild restriction" in activities of daily

20   living, "moderate difficulties" in social functioning, "mild difficulties" with respect to

21   concentration, persistence, or pace, and no episodes of decompensation.  *Id.*  In making these

22   findings, the ALJ rejected Plaintiff's contention that his PTSD, angry outbursts, and physical and

23   verbal aggression met the severity of listing 12.06 because "no acceptable medical source has

24   opined any marked limitations in functioning."  *Id.*  As for the paragraph C criteria, the ALJ found

25   them inapplicable because Plaintiff "is independent with activities of daily living from a mental

26   standpoint."  *Id.* at 16.

27       The ALJ next determined that Plaintiff retained the RFC to perform "light work" as

28

defined in the Code of Federal Regulations,[2] except that Plaintiff "must have an occupation with no public contact," and "is able to work in proximity to others, but not as a team." *Id.* The ALJ concluded that this RFC "is supported by the relatively mild nature of [Plaintiff's] back condition as demonstrated by diagnostic studies and physical examinations." *Id.* at 20. In assessing Plaintiff's RFC, the ALJ assigned "great weight" to the findings of Rose Lewis, M.D., and the analysis of the state agency. *Id.* at 17. The ALJ discounted the opinion of treating physician Susan Campbell, M.D. because "her opinion is not supported by her own clinical findings, or the clinical findings of other treating sources." *Id.* at 18. The ALJ also assigned "little weight" to the medical assessment of ability to do work related activities completed by K. Seidel, M.D., because "her opinions are inconsistent with the record as a whole." *Id.* at 19. Additionally, the ALJ gave "limited weight" to the opinions of social workers Genna B. and Maria Leung regarding Plaintiff's PTSD "because they are not acceptable medical sources." *Id.* Finally, the ALJ found Plaintiff's testimony about his own symptoms "not entirely credible," *id.* at 17, because he "is able to care for his personal needs, prepare meals, sweep, mop, wash clothes and dishes, use public transportation, shop in stores, read, play chess, and go to the mosque," *id.* at 19. Moreover, Plaintiff indicated that his visits to a psychiatrist are "helping," and that "[h]e thinks his angry outbursts are contained." *Id.* at 20. The ALJ further found that "[t]he evidence shows that the claimant stopped working for reasons other than disability." *Id.*

Based on this RFC, the ALJ determined at step four that Plaintiff was not capable of performing past relevant work as a residence counselor or residential care aid due to non-exertional limitations. *Id.* At step five, the ALJ found that there were other jobs existing in significant numbers in the national economy that Plaintiff was able to perform. *Id.* at 21. Considering Plaintiff's age, education, work experience, RFC, and the testimony of a vocational expert, the ALJ found that Plaintiff was capable of performing the requirements of three

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.926(b).

United States District Court
Northern District of California

1  representative occupations: (1) "small products assembler"; (2) "blue print trimmer"; and (3)

2  "finish inspector." *Id.* The ALJ therefore concluded that Plaintiff was not disabled and denied his

3  applications for benefits. *Id.* at 21-22.

4       **B.**     **Plaintiff's Motion for Summary Judgment**

5       Plaintiff's motion for summary judgment is far from a model of clarity. Nevertheless, the

6  Court is able to discern the following purported errors in the ALJ's decision from Plaintiff's

7  briefing: (1) the ALJ erred in rejecting the opinion of treating source Dr. Campbell at step three of

8  the analysis; (2) the ALJ erred in rejecting the opinion of psychiatrist Dr. Singh at step three of the

9  analysis; (3) the ALJ erred in discounting the opinions of psychiatrist Dr. Patel and social worker

10  Maria Leung, LCSW when assessing Plaintiff's RFC; (4) the ALJ erred in rejecting the opinion of

11  Dr. Seidel when assessing Plaintiff's RFC; and (5) the ALJ failed to include all of Plaintiff's non-

12  exertional limitations in his hypothetical questions to the vocational expert. After reviewing the

13  Administrative Record and considering all of Plaintiff's arguments, the Court concludes that the

14  ALJ's decision to deny benefits is supported by substantial evidence and based on the application

15  of proper legal standards.

16       **1.**     **The ALJ's Step Three Analysis**

17       Plaintiff contends that the ALJ improperly discounted or rejected the opinions of Dr.

18  Campbell and Dr. Singh at step three of the analysis. More generally, Plaintiff contends that

19  "[t]here is substantial evidence that Plaintiff met the mental listing for Anxiety related disorders,

20  Listing 12.06." Mot. at 1.

21       **i.**     **Dr. Campbell's Opinion**

22       The Ninth Circuit distinguishes "among the opinions of three types of physicians: (1) those

23  who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant

24  (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining

25  physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, the opinion of a

26  treating physician is entitled to greater weight than the opinion of a non-treating physician. *Id.*

27  However, a treating physician's opinion "is not binding on an ALJ with respect to the existence of

28  an impairment or the ultimate determination of disability." *Tonapetyan v. Halter*, 242 F.3d 1144,

United States District Court
Northern District of California

1148 (9th Cir. 2001).  In order to properly reject an uncontradicted opinion of a treating or examining doctor, the ALJ must state "clear and convincing reasons" for doing so.  *Lester*, 81 F.3d at 830.  If the treating physician's opinion is contradicted, an ALJ may reject the treating physician's opinion if it states "specific and legitimate reasons" that are supported by substantial evidence.  *Id.*

The ALJ rejected Dr. Campbell's opinion in a March 2013 Employment Consultation that Plaintiff has a disability because "[a]lthough she is a treating source, her opinion is not supported by her own clinical findings, or the clinical findings of other treating sources."  *Id.* at 18.  The ALJ noted that when Plaintiff first presented to Dr. Campbell in June 2012 complaining of sporadic back pain, Dr. Campbell observed that Plaintiff was able to "run a couple miles with no [chest pain]/[shortness of breath]."  AR at 293.  Dr. Campbell further observed that Plaintiff was able to climb stairs and hills and "walk a lot" without chest pain or shortness of breath.  *Id.*  In February 2013, Plaintiff reported that he had fallen while walking because of foot pain, and that the fall had resulted in "a lot of pain in his back."  *Id.* at 323.  However, during that same visit, Dr. Campbell noted that Plaintiff never went to the emergency room for treatment after his fall and "went to PT today for light exercise."  *Id.*

Moreover, contemporaneous objective medical evidence did not show a worsening of Plaintiff's back conditions after his fall.  *See id.* at 314 ("Unchanged right convex scoliosis of the thoracic spine.  Vertebral body heights are maintained."), 315 ("No evidence of intervertebral disc space narrowing, neuroforaminal narrowing, or fracture.  No evidence of spondylolisthesis or spondylitis.").  Dr. Shane Burch, who also consulted with Plaintiff in February 2013, observed that Plaintiff's "back is currently stiff," and that "[h]e has just started PT," which "has not helped with the pain but his course is incomplete."  *Id.* at 384.  Dr. Burch further observed that "there are no problems with mobility and there are no problems with self care."  *Id.*  Dr. Burch concluded that Plaintiff "will benefit from physical therapy."  *Id.* at 386.  During Plaintiff's visit one month later, Dr. Campbell observed that Plaintiff was doing "so-so," and that his back was "still stiff b/c hasn't seen PT yet."  *Id.* at 321.

The Court finds that the ALJ articulated clear and convincing reasons to reject Dr.

Campbell's opinion.  As the ALJ notes, Plaintiff reported that he was able to climb stairs and hills, and run a couple of miles despite his back pain.  Even after Plaintiff's reported fall, Dr. Campbell's objective clinical records did not demonstrate a worsening of his back condition. Additionally, the evidence in the record shows that Plaintiff failed to seek immediate treatment following his fall and delayed completing his prescribed physical therapy treatment.  *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995) ("Failure to follow a prescribed course of remedial treatment without good reason is grounds for denying an application for benefits."); *cf. Stout v. Shalala*, 988 F.2d 853, 855 (8th Cir. 1993) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling").  Finally, Dr. Burch's contemporaneous opinion conflicted with Dr. Campbell's ultimate opinion regarding disability, as Dr. Burch observed "no problems with mobility."  AR at 384.

In his motion, Plaintiff summarizes Dr. Campbell's medical findings that are favorable to him and summarily concludes that "[t]he ALJ did not give Dr[]. Campbell . . . the weight an ALJ is required to give pursuant to the Treating Source Rule."  Mot. at 6-8.  The Court disagrees. Based on his consideration of the full evidentiary record, the ALJ properly weighed Dr. Campbell's opinion and rejected it on the basis of clear and convincing reasons.

### ii.      Dr. Singh's Opinion

In concluding that "no acceptable medical source has opined any marked limitations in functioning," the ALJ found that Dr. Singh "noted that the claimant had a good response to Remeron for his PTSD in terms of sleep and nightmares, but it was making him too groggy.  She stated that increasing Remeron to a higher dose may be less sedating."  AR at 15-16.  As he did with respect to Dr. Campbell, Plaintiff makes the conclusory argument that "[t]he ALJ did not give Dr[]. . . . Singh the weight an ALJ is required to give pursuant to the Treating Source Rule." Mot. at 8.  Plaintiff appears to be arguing that the ALJ improperly rejected or discounted aspects of Dr. Singh's opinion that show that Plaintiff meets or medically equals the severity of a listed impairment, *see* Mot. at 8-9, but Plaintiff does not identify what aspect of Dr. Singh's opinion was entitled to greater weight.  Indeed, the assessments by Dr. Singh in the Administrative Record generally imply that Plaintiff's mental impairments are manageable.  *See, e.g.*, AR at 344 ("Notes

8

that violence impulse is only if provoked which is why he avoids crowds. . . . 41 y.o. male with PTSD who has seen a lot of violence and had it touch poignantly close to home.  He has managed to stay out of trouble despite constant triggers and states that his children are a source of motivation."), 364 ("He tells me about being in LA with GF and his plan to return for more time there in June.  While with her he eats well and feels good.").

Rather than identifying an *opinion* by Dr. Singh that would support his position at step three of the analysis, Plaintiff cherry picks certain facts from his life history as evidence that his impairments meet or equal the Anxiety listing.  The Court does not doubt that Plaintiff has had a difficult life, and there is no reason to question Plaintiff's testimony regarding his violent past.  But viewed as a whole, the evidentiary record—and Dr. Singh's assessments in particular— suggest that Plaintiff has been able to successfully manage his PTSD, stress, and violent outbursts so that he can engage in activities of daily living and social functioning without marked limitation.

The Court finds that the ALJ properly weighed Dr. Singh's opinion.

### iii.   Substantial Evidence Supports the ALJ's Decision at Step Three

Plaintiff also makes the catch-all argument that "[t]here is substantial evidence that Plaintiff met the mental listing for Anxiety related disorders, Listing 12.06."  Mot. at 1.  As an initial matter, Plaintiff inverts the applicable legal standard.  The ALJ's decision must stand unless it is *not* supported by substantial evidence.  *Vertigan*, 260 F.3d at 1049.  In other words, even if there is substantial evidence that Plaintiff met the listing, that does not preclude a finding that there was also substantial evidence that Plaintiff did not meet the listing, because evidence is substantial if it is "more than a mere scintilla but less than a preponderance; it is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Sandgathe*, 108 F.3d at 980.  And "[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."  *Burch*, 400 F.3d at 679.

In any event, the Court finds that the ALJ's conclusion at step three was supported by substantial evidence.  As described above, the ALJ properly weighed the relevant medical evidence.  Additionally, the ALJ identified the extensive evidence from Plaintiff's own testimony that supports the ALJ's conclusion.  *See* AR at 15-16.  The ALJ did not commit legal error at step

United States District Court
Northern District of California

1    three of his analysis.

2              2.        The ALJ's RFC Assessment

3         Plaintiff next argues that the ALJ erred when assessing Plaintiff's RFC.  Specifically,

4    Plaintiff argues that the ALJ improperly discounted the opinions of (1) psychiatrist Dr. Patel and

5    social worker Ms. Leung, and (2) Dr. Seidel.

6         In order to properly determine a claimant's RFC, the ALJ must consider the claimant's

7    mental limitations in four broad functional areas: activities of daily living; social functioning;

8    concentration, persistence, or pace; and episodes of decompensation. *See* 20 C.F.R.

9    § 404.1520a(c)(3).  The Code of Federal Regulations requires an ALJ to consider all of the

10   claimant's limitations when assessing her RFC, including any non-severe mental limitations.  *Id.*

11   § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we

12   are aware, including your medically determinable impairments that are not 'severe,' . . . when we

13   assess your residual functional capacity.").

14        In this case, the ALJ found that Plaintiff did not have a severe physical or mental

15   impairment at step two of his analysis.  However, the ALJ "generously reduced the capacity from

16   medium work to light work based on [Plaintiff's] subjective complaints of pain."  AR at 17.  The

17   ALJ further noted that he "has considered [Plaintiff's] angry outbursts, and therefore, has placed

18   limits on social interaction in the residual functional capacity."  *Id.* at 16.  Specifically, the ALJ

19   qualified Plaintiff's RFC by requiring that he "have an occupation with no public contact" and not

20   work "as a team."  *Id.*

21              i.        Opinion of Dr. Patel and Ms. Leung

22        Plaintiff contends that the ALJ did not properly weigh the opinions of psychiatrist Dr. Patel

23   and psychotherapist Ms. Leung when assessing Plaintiff's RFC.  But the medical assessment

24   signed by Dr. Patel and Ms. Leung that Plaintiff cites in his motion for summary judgment is not

25   contrary to the ALJ's RFC assessment.  *Id.* at 463-66.  In that assessment, Dr. Patel and Ms.

26   Leung note that Plaintiff "frequently experiences depressed and irritable mood, intrusive thoughts,

27   difficulty sleeping, avoidance behaviors, and angry outbursts."  *Id.* at 463.  They rate him as "Fair"

28   when it comes to relating to coworkers, dealing with the public, using judgment, and dealing with

United States District Court
Northern District of California

10

United States District Court
Northern District of California

1   work stress.  *Id.* at 465.  But they rate Plaintiff as "Good" when it comes to following work rules,

2   interacting with supervisors, and functioning independently, and "Very Good" in maintaining

3   attention or concentration.  *Id.*

4        The ALJ properly took Plaintiff's moderate mental limitations identified by Dr. Patel and

5   Ms. Leung into account when assessing his RFC, as reflected in the qualifications to the RFC.

6   Moreover, Plaintiff's own testimony indicates that "his angry outbursts are contained" and that he

7   is learning to "isolate himself so as not to have bad interactions with others."  *Id.* at 20.  The Court

8   finds that the ALJ properly weighed and incorporated Dr. Patel's and Ms. Leung's opinion into his

9   RFC assessment.

10                    **ii.    Dr. Seidel's Opinion**

11       Plaintiff also contends that the ALJ, in finding that Plaintiff could lift up to 20 pounds,

12  improperly rejected the opinion of treating source Dr. Seidel, who opined that Plaintiff could lift

13  up to ten pounds occasionally, lift up to nine pounds frequently, sit, stand, and/or walk for less

14  than two hours in an eight-hour workday, and never stoop, kneel, crouch, and crawl.  *Id.* at 461-

15  62.  The ALJ "assign[ed] little weight to Dr. Seidel because her opinions are inconsistent with the

16  record as a whole, particularly the diagnostic studies, the findings of Dr. Burch, Dr. Campbell, and

17  the examination by Dr. Lewis."  *Id.* at 18-19.

18       Dr. Lewis opined that Plaintiff could lift 50 pounds occasionally and 25 pounds frequently,

19  and that he had "[n]o limitations" in terms of sitting, standing, and walking capacity.  *Id.* at 281.

20  Dr. Burch did not opine on Plaintiff's ability to lift heavy objects, but found "no problems with

21  mobility."  *Id.* at 384.  Because Dr. Seidel's opinion is contradicted, the ALJ need only provide

22  "specific and legitimate" reasons to reject it.  *Lester*, 81 F.3d at 830.

23       The Court finds that the ALJ has identified specific and legitimate reasons to reject Dr.

24  Seidel's opinion regarding Plaintiff's exertional limitations.  The evidence in the record, in

25  particular Plaintiff's own testimony, contradicts Dr. Seidel's opinion and thereby lessens her

26  credibility.  For example, Plaintiff testified that he is able to make breakfast, walk, sweep, do

27  dishes, cook, do laundry, shop in stores, and use public transportation.  *Id.* at 19.  This testimony,

28  and other evidence in the record, supports the ALJ's rejection of Dr. Seidel's opinion and

1    determination that Plaintiff is capable of performing "light work" as defined by the Code of

2    Federal Regulations.

3         The Court finds that the ALJ did not commit legal error when assessing Plaintiff's RFC.

### 3.    The ALJ's Step Five Analysis

5         Finally, Plaintiff argues that the ALJ failed to include all of Plaintiff's exertional and non-

6    exertional limitations in his hypothetical questions to the vocational expert.  Specifically, Plaintiff

7    contends that the ALJ should have included limitations related to (1) Plaintiff's inability to work

8    with coworkers due to anger control issues and violent impulses; and (2) grogginess caused by

9    Remeron, a medication Plaintiff was taking.

10        First, as described above, the Court finds that the ALJ's RFC assessment properly accounts

11   for Plaintiff's moderate functional limitations related to anger control issues.  Therefore, the ALJ

12   did not err by not posing hypotheticals incorporating specific descriptions of various anger control

13   issues that Plaintiff has had in the past to the vocational expert.

14        Second, the Court finds that the ALJ was not required to pose hypotheticals incorporating

15   Plaintiff's purported grogginess to the vocational expert because the evidence in the record does

16   not support such a limitation.  Although Plaintiff reported to Dr. Singh that the Remeron was

17   making him feel groggy, she instructed him "[t]o really get the anti-depressant effect and

18   acclimate to the grogginess, he ought to take it daily."  AR at 368.  One month later, Dr. Singh

19   observed that "when [Plaintiff] takes [Remeron], he sleeps 10h and quite well."  *Id.* at 374.

20   Plaintiff did not report any grogginess at the follow-up consultation.  Accordingly, the ALJ did not

21   err by not posing hypotheticals dealing with any purported grogginess.

United States District Court
Northern District of California

12

IV.    **CONCLUSION**

For the foregoing reasons, Plaintiff's motion is DENIED.  Because the government did not file a cross-motion for summary judgment, the parties are ORDERED to meet and confer and submit a joint statement no more than two pages in length by 5:00 p.m. on February 8, 2016 indicating what if anything remains to be decided in this case in light of this order.

**IT IS SO ORDERED.**

Dated: 2/1/2016

HAYWOOD S. GILLIAM, JR.
United States District Judge